**Albert MASARJIAN, et al.**

**v.**

**MARK LIGHTING FIXTURES CO., INC.**

**Civ. No. B–81–438 (PCD)**

United States District Court, D. Connecticut.

Oct. 11, 1984.

**870**

Eric N. Wellman, Jones, Damia, Wellman, Kaufman & Borofsky, Danbury, Conn., for plaintiffs.

Clifford J. Grandjean, Rosenberg, Barnett, Sattin & Kardon, Hartford, Conn., for defendant.

## RULING ON MOTION FOR SUMMARY JUDGMENT

DORSEY, District Judge.

In this action, plaintiffs seek commissions allegedly due under a sales representative contract. Defendant has moved for summary judgment, Rule 56(b), Fed.R. Civ.P.

*Background*

The uncontroverted facts follow. On or about January 10, 1978, plaintiffs, Albert Masarjian and Fred Merrill, doing business as Meridian Enterprises (Meridian), entered into a sales representative agreement with defendant, Mark Lighting Fixtures Co., Inc. (Mark). Meridian was to solicit orders for commercial lighting fixtures manufactured by defendant. The agreement authorized plaintiffs' efforts in western Massachusetts and all of Connecticut. The agreement contained specifics of the process by which commissions were to become due and be paid, a non-competition clause and a promise by defendant to provide samples and advertising. The agreement was of indefinite duration, but was terminable by either party upon thirty days' written notice to the other.

On April 30, 1979, Mark gave plaintiffs written notice of termination of the agreement, effective June 1, 1979. Prior to the notice plaintiffs had initiated efforts to sell Mark products, through Grand Light & Supply Co., to J.A. Valenti, Inc., an electrical contractor that expected to receive a contract to install light fixtures at Union Carbide headquarters in Danbury, Connecticut. No order for such equipment had been obtained by plaintiffs nor placed with defendant on or before June 1, 1979.

Plaintiffs claim a commission on an order placed with Mark by Valenti after June 1, 1979. Plaintiffs contend that defendant acted in bad faith in terminating the agreement in order to deny plaintiffs a commission on the Valenti order. In addition, plaintiffs claim to have been the procuring cause of the Valenti order and thus entitled to a commission as provided by the agreement as if the order was placed prior to the termination of the agreement.

Defendant argues that the termination of the agreement was in accordance with its terms and no commission is owed as no order was placed before the termination. Defendant moved for summary judgment on this basis.

*Discussion*

■ Summary judgment may be appropriate in a contract case. *Harrison Western Corp. v. Gulf Oil Co.*, 662 F.2d 690, 691–92 (10th Cir.1981). Where the issue is covered in the contract, and no genuine issue of material fact remains to be decided, the motion may be determined as a matter of law. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 444 (2d Cir.1980); *Heyman v. Commerce & Industry Ins. Co.*, 524 F.2d 1317, 1319 (2d Cir. 1975).

■ Connecticut courts look to the law of place of the execution of the contract, but if the operative effect or performance is other than where the contract was executed, the court will look to the law of the state of the operative effect or performance. *Grand Sheet Metal Prod. Co. v. Aetna Cas. & Sur. Co.*, 500 F.Supp. 904 (D.Conn.1980); *see Whitfield v. Empire Mut. Ins. Co.*, 167 Conn. 499, 505–06, 356

A.2d 139 (1975). It is unclear where the contract was executed. Since the contract was to be performed and had its operative effect substantially in Connecticut, Connecticut law would apply.

Plaintiffs' major contention is that defendant cannot arbitrarily cut off their entitlement to commissions by invoking the termination clause. No claim is made that defendant did not follow the procedure described in the contract for terminating the agreement. Nonetheless plaintiffs claim that defendant may not cut off plaintiffs' entitlement to a commission arising from an order placed after the termination date but in the seminal stage on that date as a result of plaintiffs' solicitation. Put another way, plaintiffs claim defendant may not terminate the agreement for the purpose of defeating plaintiffs' right to bring an incipient order to fruition and thereby earn a commission. Plaintiffs argue that their efforts to obtain an order from Valenti were unfairly thwarted by the termination and they should have been permitted to bring their sales efforts to a conclusion, thereby earning a commission. Plaintiffs' position is not supported by any language in the contract and is dependent on an implied condition of good faith before the right to terminate may be exercised.

Defendant relies on the assertedly unambiguous language of the agreement which provides for commissions on orders placed before the effective termination date. The agreement provides:

5. This agreement shall be of an indefinite term and may be terminated by either party thereto upon thirty (30) days written notice to the other ....

Motion for Summary Judgment, Exhibit G. Thus, the contract was terminable at will by either party with no requirement of cause nor good faith being set forth. There is no indication nor claim that the contract did not embody all of the terms of the parties' agreement. Where the parties have expressed their intent, the court cannot rewrite the agreement because one party is unhappy with the contract terms in a particular fact situation. *See Collins v. Sears, Roebuck & Co.*, 164 Conn. 369, 321 A.2d 444 (1973). No Connecticut case appears to have imposed a condition of good faith upon a termination-at-will clause. In a similar case, this court has construed a termination clause under the law of Michigan where the courts of that state also had not ruled on the claim that a condition of good faith should be implied, *Biever Motor Car Co. v. Chrysler Corp.*, 108 F.Supp. 948 (D.Conn.), *aff'd*, 199 F.2d 758 (2d Cir.1952), *cert. denied*, 345 U.S. 942, 73 S.Ct. 834, 97 L.Ed. 1368 (1953); *see also, Rubinger v. IT&T Corp.*, 193 F.Supp. 711 (S.D.N.Y. 1961), *aff'd*, 310 F.2d 552 (2d Cir.1962), and held that the exercise of a right to terminate at will is not conditioned upon a showing of good cause or good faith. In *Biever* the clause at issue allowed termination after the occurrence of specified events or upon the occurrence of "certain other conditions" with ten-days written notice. A good faith requirement would more likely be implied in *Biever* where the contract listed occurrences and "certain other conditions" that could arguably constitute specifications of a good faith termination. Yet a good faith requirement was held not to be implied.[1]

1. There is a split in the decisions dealing with the good faith requirement. There are a number of cases that have imposed a good faith requirement where there was clear support in applicable state law. *See Randolph v. New England Mut. Life Ins. Co.*, 526 F.2d 1383 (6th Cir. 1975) (Ohio law requires good faith in termination of a contract for a fixed term); *de Treville v. Outboard Marine Corp.*, 439 F.2d 1099 (4th Cir.1971) (South Carolina law clearly required good faith); *Tele-Controls, Inc. v. Ford Indust., Inc.*, 388 F.2d 48 (7th Cir.1967) (Oregon statute imposed a good faith requirement).

Other courts have ruled that no good faith requirement should be implied. *See Bushwick-Decatur Motors, Inc. v. Ford Motor Co.*, 116 F.2d 675 (2d Cir.1941) (Michigan law imposes no good faith requirement in termination-at-will clause); *Corenswet, Inc. v. Amana Refrigeration, Inc.*, 594 F.2d 129 (5th Cir.), *reh'g denied*, 597 F.2d 772 (5th Cir.), *cert. denied*, 444 U.S. 938, 100 S.Ct. 288, 62 L.Ed.2d 198 (1979) (good faith not implied where contract term specified manner of termination); *Rockwell Eng'g Co. v. Automatic Timing & Controls Co.*, 559 F.2d 460 (7th Cir.1977) (Indiana laws did not require good

In *Parks v. Baldwin Piano & Organ Co.*, 262 F.Supp. 515 (D.Conn.), *aff'd*, 386 F.2d 828 (2d Cir.1967), the law of Ohio was also held not to require good faith in termination. *See Green Bay Auto Distrib. v. Willys-Overland Motors*, 102 F.Supp. 151 (N.D.Ohio 1951) (defendant's "right to terminate it was subject to no conditions as to good or bad faith, motive, intent or results" (quoting *Martin v. Ford Motor Co.*, 93 F.Supp. 920, 921 (E.D.Mich.1950)). In *Parks* the relationship in question was held to be properly terminated simply by giving proper notice, thereby relieving defendant of all further liability. *Parks*, 262 F.Supp. at 519. In affirming, our Circuit Court of Appeals held that the contract's "unambiguous terms also left Parks vulnerable to the summary termination of his dealership by Baldwin and it is beyond the province of this court to imply limitation or conditions on the exercise of a power to terminate, so unmistakably expressed." *Parks*, 386 F.2d at 829. In support of its refusal to imply a good faith limitation, the court cited *Bushwick*, which held:

> With a power of termination at will here so unmistakably expressed, we certainly cannot assert that a limitation of good faith was anything the parties had in mind. Such a limitation can be read into the agreement only as an overriding requirement of public policy. This seems an extreme step for judges to take.

*Bushwick*, 116 F.2d at 677.

■ As there is no ambiguity to be construed, and no language suggesting other than a right of termination at will, under the rule that contracts shall be enforced according to their terms, a view adhered to by Connecticut's courts, neither cause nor good faith is required before the agreement may be terminated. When presented with the question Connecticut courts would probably hold likewise. Thus the question of good faith is not a genuine issue in this case.

Plaintiffs claim, alternatively, without reliance other than on the contract, a commission on the ground that the sale to Valenti was procured by their efforts. They cite authorities which hold that an agent is entitled to a commission on sales which the agent procured. Those cases did not involve an unambiguous and controlling contract clause. Here, the contract clearly specifies the conditions under which plaintiffs' right to commissions accrue upon termination. "[T]he company's liability to the sales representative shall be limited solely to commissions for the sales orders placed by the sales representative prior to such termination." Defendant's Memorandum in Support of Motion for Summary Judgment, Exhibit G.

■ The parties thus stated their intent clearly and unambiguously with respect to commissions owed upon termination. Under the termination provision, plaintiffs are not entitled to the commission which they seek. After notice of termination, plaintiffs had thirty days to place sales orders with defendant in order to accrue commissions. To sustain plaintiffs' claim, the terms of the contract would necessarily be disregarded and new terms inserted to extend the thirty day period for the effective termination date, at least for the cut off of commissions accrued. Courts must give effect to unambiguous contract terms to promote stability, certainty, and fairness in contract enforcement. What the parties expressed as their intent in the contract, the court will not rewrite. The parties did not provide for accrual of commissions where plaintiffs were the procuring factor of orders placed after termination. It is not for the court to add such a provision. Neither may the court determine the reasonableness or fairness of the terms upon which the parties unambiguously agreed. *See Collins*, 164 Conn. 369, 321 A.2d 444. Thus, the claim that plaintiffs were the procuring cause of the sale does not present a genuine issue of material fact.

Plaintiffs' final claim to a commission is on the ground that they were exclusive

faith); *Niagara Mohawk Power v. Graver Tank & Mfg. Co.*, 470 F.Supp. 1308, 1317 (N.D.N.Y. 1979) (New York would probably not impose a good faith requirement).

agents for Mark in Connecticut and should, therefore, receive a commission on the sale to Valenti. The exclusive territory clause is co-extensive in duration to the remainder of the contract. It adds nothing to the clauses controlling commission accrual, particularly upon termination. This claim is controlled by the fact that the contract was validly terminated as discussed above and, after the effective termination date, the contract no longer exists and thus cannot thereafter give rise to any rights.

In sum, there is no genuine issue of material fact in this case.[2]

Defendant's motion for summary judgment is granted.

SO ORDERED.

---

2. The parties never submitted depositions to the court as they had indicated that they would do, but, in any event, little reference to the depositions has been made. The depositions seemingly have no effect on the resolution of this motion.